ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6767
    Fax: (415) 436-7234
    Alexandra.Shepard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-mj-71332-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| RAUL LUISA-ORTEGA, | Date:  August 7, 2023 |
| Defendant. | Time:  10:30 a.m. |
| | Court: Hon. Peter Kang |

## I. INTRODUCTION

Defendant Raul Luisa-Ortega is an unrepentant recidivist who poses a danger to the community and a risk of flight. Just months after completing supervised release following his federal conviction for dealing dangerous, addictive drugs in San Francisco, defendant Raul Luisa-Ortega is charged <u>again</u> with dealing dangerous, addictive drugs in San Francisco. He is also a native of Honduras with close family ties to Honduras who, facing his second round of federal charges, has a strong incentive to flee. He cannot overcome the presumption that there is no condition or combination of conditions that can provide for the safety of the community or secure his appearance before the Court. Accordingly, the government requests that he be detained pending trial.

## II. FACTUAL BACKGROUND

### A. Defendant is Repeatedly Arrested for Drug Dealing Upon His Arrival in the United States

The defendant is a citizen of Honduras who entered the United States approximately seven years ago. He has been repeatedly arrested for dealing drugs in San Francisco since his arrival. He was first arrested in August 2018 for dealing cocaine base (crack cocaine) at 50 UN Plaza (a federal building) and charged with possession for sale of cocaine base, and unlawful possession for sale or purchase of a controlled substance. In October 2018 he was arrested again and charged with transportation for sale of a controlled substance, and possession for sale of cocaine base. In March 2019 he was arrested yet again and charged with possession for sale of cocaine base, unlawful possession for sale or purchase of a controlled substance, contempt of a court order, and resisting arrest. By the time he was charged federally, he was subject to two stay-away orders in the city of San Francisco: Stevenson Alley between Sixth and Seventh Streets, and the triangle bounded by Hyde Street, McAllister Street, and Market Streets. The defendant was also charged three separate times with failing to appear for his court dates on these drug charges, in March 2019, May 2019, and September 2019.

### B. Defendant Pleads Guilty to Federal Charges of Distributing Cocaine Base

On September 13, 2019, the defendant was standing next to the University of California College of the Law on Hyde Street in San Francisco when he displayed a selection of cocaine base and heroin to an individual who turned out to be an undercover officer (UC). He then sold four rocks of the cocaine

base to the UC. He was charged with distribution of cocaine base (Count 1) and possession with intent to distribute heroin (Count 2), both pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(C). The defendant pled guilty to Count 1. He was sentenced to six months of prison and three years of supervised release.

The defendant sold these drugs within 1000 feet of two school zones, as defined by 21 U.S.C. §860(a): De Marillac Academy (a Catholic school for underserved youth in the Tenderloin at 175 Golden Gate Avenue); and one of the two playgrounds in Civic Center Plaza.

### C. Defendant Sells Fentanyl and Methamphetamine in August 2023

The defendant completed his three-year term of federal supervised release in April 2023. Just a few months later, in August 2023, he sold suspected controlled substances to a UC on three separate occasions. The last of those sales led to this federal charge.

On August 1, 2023, the defendant sold two bags of suspected fentanyl to a UC for $400 and negotiated prices for future fentanyl and potential methamphetamine and heroin sales transactions. The combined weight of both baggies of suspected fentanyl was 58.9 gross grams. Law enforcement used a TruNarc Analyzer Device to test the suspected fentanyl, which yielded a presumptive positive test results for mannitol. Mannitol is a common cutting agent that is often incorporated into fentanyl to reduce its potency, increase the yield of fentanyl to be sold and increase profit margins. Suspected fentanyl which shows presumptive results for mannitol routinely tests positive for fentanyl at the Alameda County Crime Lab. The defendant made arrangements for the deal with the UC by text and telephone; a woman who identified herself as the defendant's "wife" assisted with interpreting between English and Spanish on the telephone.

On August 10, 2023, the defendant agreed to meet the UC for another sale of controlled substances. Later that day, the UC and the defendant met on Larkin Street between Golden Gate Avenue and McAllister Street, a half-block from the federal courthouse and one block from the two playgrounds in Civic Center Plaza. The defendant provided the UC with a clear plastic bag that contained (suspected) white and multi-colored "rainbow" fentanyl in exchange for $550. This suspected fentanyl weighed approximately 89.1 gross grams and when tested using a TruNarc Analyzer Device, showed presumptive positive for "Clear – Mannitol," similar to the previously purchased suspected fentanyl.

On August 21, 2023, the defendant met with the UC again, this time near 8th Street and Folsom Street in San Francisco. He sold the UC one bag of approximately 30.3 gross grams suspected fentanyl and one bag of approximately 30.3 gross grams of methamphetamine for $330. Both substances were later tested with the TruNarc. The TruNarc results of the suspected fentanyl showed a presumptive positive result for "Clear – Mannitol" and the suspected methamphetamine tested presumptive positive for methamphetamine. The defendant was then charged by criminal complaint with distribution of C-weight methamphetamine.

On August 31, 2023, law enforcement searched the defendant's residence, vehicle, and person pursuant to a search warrant.[1] When law enforcement searched his house, they encountered his girlfriend and his two-year-old son, as well as his girlfriend's father who was visiting his grandson. They found a black plastic bag containing suspected heroin and a digital scale in an upper kitchen cabinet, and a .50 caliber muzzle loading black powder rifle in a bag hung on the back of a bedroom door.

The defendant was arrested after traveling to San Francisco to sell three more ounces of fentanyl to the UC. During a search of his vehicle, law enforcement found two bags of suspected narcotics concealed in a compartment under the door handle, and saw two plastic bags of white powder fall from under the steering wheel. Nothing was found on his person. In total, law enforcement seized the following: 411.1 gross grams of suspected heroin from his residence, 132.3 gross grams of suspected fentanyl seized from his car, and 15.5 gross grams of suspected heroin from his car.

In a Mirandized interview following his arrest, the defendant admitted that he possessed and sold narcotics including fentanyl, that he knew that fentanyl often kills people, that the suspected heroin and fentanyl in the vehicle (and the vehicle itself) belonged to him, and that he owned the black powder rifle found in his house.

---

[1] *See* 3:23-mj-71331 TSH.

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

When the case involves an offense for which a maximum term of imprisonment for ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant

3:23-mj-71332-MAG
5

rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### IV.   ARGUMENT

1. <u>The defendant faces a rebuttable presumption in favor of detention.</u>

The defendant was arrested for a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), which carries a maximum term of imprisonment of more than ten years under the Controlled Substances Act. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of defendant as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, the defendant will be unable to overcome this presumption.

2. <u>The defendant cannot overcome the presumption that he is a danger to the community.</u>

The defendant's actions show a callous disregard for the dangerousness of his conduct. His first federal conviction stemmed from a crack cocaine sale which took place just down the street from an elementary school in one direction, and two heavily used playgrounds in another. Prior to the drug deal which resulted in his current arrest, he sold suspected fentanyl to the UC just up the block from the same two playgrounds, and in the literal shadow of the same federal courthouse where he was previously convicted. Drugs were also found in the kitchen of the house where he lived with his two-year-old son, and in his vehicle. During their investigation, law enforcement surveilled the defendant in this same vehicle—an Infiniti SUV with a "Baby on Board" bumper sticker—driving a young child on August 11, 2023, a day after he sold suspected fentanyl to the UC.

The defendant's willingness to sell fentanyl—a particularly lethal controlled substance—demonstrates his dangerousness to the community. All drugs are harmful but fentanyl is particularly so. *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs. As is widely reported, there are multiple fentanyl overdose deaths in San Francisco every day. The defendant knows that fentanyl is extremely dangerous; he admitted it to law enforcement. Yet he carried his toddler son in the same vehicle in which he stored fentanyl and heroin.

The defendant's drug dealing, alone, demonstrates danger to the community. But he also kept a black powder rifle, a dangerous weapon, casually hanging on a bedroom door where it was accessible by his young son and anybody else in the home. Firearms, like drugs, are specifically called in 18 U.S.C. § 3142(g)(1) as a factor when considering the nature and circumstances of the offense.

The defendant has demonstrated, repeatedly, that he has no regard for the law and is a danger to the community.

3. <u>The defendant cannot overcome the presumption that he is a flight risk.</u>

The government agrees with Pretrial Services that the defendant is flight risk. He has already demonstrated that he is a risk of nonappearance, because he repeatedly failed to appear in state court proceedings in San Francisco. He is a Honduran national with no legal residency status here in the United States. He no known legitimate employment; he claims to earn $1,700 a month (conveniently, the exact amount of his monthly rent), but doesn't know the name of his employer.

In addition, the defendant has a strong incentive to flee because he faces a severe penalty if convicted. The weight of the evidence—though the least important factor—is strongly against the defendant. He was charged in the complaint with dealing C-weight methamphetamine, he sold suspected fentanyl to a UC on three separate occasions, and he was hiding baggies of fentanyl and heroin in his car on his way to another drug deal. Given his criminal history, he now faces a penalty more severe than any penalty he has faced to date, which creates a strong incentive for him to flee immediately if released. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").

## V. CONCLUSION

The defendant cannot overcome the presumption that there are no conditions that will reasonably ensure the safety of the community or assure his appearance at court proceedings. The Court should order the defendant detained pending trial.

DATED: August 6, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Alexandra Shepard*
ALEXANDRA SHEPARD
Assistant United States Attorney