UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL ALEXANDER GUISA-ORTEGA,<br><br>Defendant. | Case No. 23-cr-00326-SI-1   (PHK)<br><br>**ORDER RE PARTIES' DISPUTES RE STANDARD OF PROOF FOR PRETRIAL RELEASE REVOCATION UNDER 18 U.S.C. § 3148** |

## INTRODUCTION

Defendant Raul Alexander Guisa-Ortega ("Guisa-Ortega") faces one count of distribution and possession with intent to distribute a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Subsequent to his arrest, on September 7, 2023, Defendant was released on a $50,000 unsecured bond subject to certain conditions, including those relevant to the instant dispute: that he (1) "not commit any federal, state, or local crime;" (2) "not use or possess any narcotic or other controlled substance without a legal prescription;" (3) submit to location monitoring and periodic drug testing as directed by Pretrial Services; and (4) remain at his residence at all times, except with Pretrial Services' prior approval. [Dkt. 11].

On November 2, 2023, Pretrial Services filed a Memorandum informing the Court that Guisa-Ortega tested positive for marijuana on three separate occasions since his release—September 8, 2023, October 4, 2023, and October 19, 2023. [Dkt. 23]. According to the November 2 Memorandum, Guisa-Ortega admitted to using marijuana when confronted by Pretrial Services with the first two positive tests results, but he denied any recent illicit drug usage

when confronted with the third positive test result. In advising the Court of these alleged violations, Pretrial Services recommended that no changes be made to the conditions of Guisa-Ortega's release and advised that it would continue to monitor his drug tests. At a November 3, 2023 status conference, the Court admonished Guisa-Ortega to refrain from using controlled substances and ordered him to otherwise comply with the conditions of his release. *See* Dkt. 24.

On January 24, 2024, Pretrial Services filed a "Violation Notice/Informational Memorandum" with the Court, advising that Guisa-Ortega tested positive for fentanyl on December 20, 2023, and again, on January 2, 2024. [Dkt. 31]. The January 24 Memorandum states that Guisa-Ortega "denied using any illicit substances" when confronted with the positive test results. Noting Pretrial Services' particular concern with Guisa-Ortega's "denial of using any illicit substances," the January 24 Memorandum recommended that the Court hold a hearing "to discuss the positive drug tests and admonish the defendant regarding his dishonesty." This Memorandum also recommended that Guisa-Ortega's pretrial release conditions be modified to require that he "participate in substance abuse counseling, on an inpatient or outpatient basis, as directed by Pretrial Services."

On February 1, 2024, the Court held a Bond Violation Hearing regarding the alleged violations set forth in the January 24 Memorandum. At the hearing, Pretrial Services informed the Court that, in addition to testing positive for fentanyl on December 20, 2023 and January 2, 2024, Guisa-Ortega tested positive for the substance on two subsequent occasions – January 11, 2024 and January 16, 2024. In light of the two additional positive fentanyl tests, Pretrial Services verbally recommended that Guisa-Ortega be ordered to show cause as to why his bond should not be revoked. The Government concurred and argued that Guisa-Ortega's bond be revoked and that he be detained pending resolution of his underlying case. Defense counsel opposed, and in particular denied Guisa-Ortega's knowing use of fentanyl but indicated his receptiveness to inpatient substance abuse treatment. The Parties raised for the first time a dispute as to the proper evidentiary standard which should be applied to the determination of facts underlying the alleged violations: the Government's position was that the proper legal standard is the probable cause standard; the defense argued that the proper legal standard is the clear and convincing legal

standard. Neither Party (nor Pretrial Services) had presented the Court with legal research or briefing on this issue. Accordingly, the Court ordered the Parties to submit briefing regarding their dispute as to the standard of proof governing requests for revocation of pretrial release. The Court also modified the conditions of Guisa-Ortega's pretrial release to include house arrest and increased drug testing and treatment.

The Parties filed their briefs and subsequently, on February 16, 2024, the Court held a further Bail Revocation Hearing to address whether Guisa-Ortega's pretrial release should be revoked, in accordance with 18 U.S.C. § 3148(b), based on the four positive fentanyl tests. At the hearing, the Parties argued at length over the proper legal standard. As to the application of the facts under the legal standard, the Government argued that, under either the probable cause or clear and convincing standard, there was sufficient evidence in the record to demonstrate that Defendant's bond should be revoked, based primarily on the multiple positive fentanyl tests. The defense argued that the Defendant's earnest denial of taking fentanyl and his lack of positive test results until recently raised factual questions regarding the testing agency which provided the positive fentanyl test results. The Court granted Guisa-Ortega's request for limited discovery relating to the chain of custody of Defendant's urine samples and the qualifications of the laboratories involved in processing the positive fentanyl tests at issue. A Further Bail Hearing is set for March 6, 2024. This Order addresses and resolves the legal dispute between the Parties, which appears to be an issue not often litigated in pre-trial criminal matters.

## **ANALYSIS**

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, is the statutory scheme governing the circumstances under which bail may be granted as well as subsequently revoked. In summary, the statutory scheme mandates the pretrial release of a defendant (subject to conditions where appropriate) if the Court can be reasonably assured that a defendant does not pose a flight risk or is not a danger to the community.

A defendant who violates a condition of their pretrial release is subject to revocation of release and detention. 18 U.S.C. § 3148(a). A court must revoke pretrial release and order

detention if, after a hearing, the court:

(1) finds that there is—

    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that—

    (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

Thus, revocation is governed by a two-step process. At the first step, the Court must determine whether there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release," or whether there is "clear and convincing evidence that the person has violated any other condition of release." The burden of proof at this step is on the Government.

Probable cause exists, for purposes of § 3148(b)(1)(A), when the "facts and circumstances [are] 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) ("[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail."). "'Probable cause' means a 'fair probability.'" *United States v. Motley*, 89 F.4th 777, 787 (9th Cir. 2023) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021) (quoting *District of Columbia v. Wesby*,

583 U.S. 48, 57 (2018)). "Neither certainty nor a preponderance of the evidence is required." *Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788, 819 (9th Cir. 2020) (quoting *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007)). The "probable cause" standard "is not a high bar." *Wesby*, 583 U.S. at 57 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

The "clear and convincing" standard, by contrast, is "demanding." *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001). That standard requires proof beyond a preponderance of the evidence. *Id.* Under the "clear and convincing" standard, the factfinder must have "'an abiding conviction that the truth of [the] factual contentions' at issue is 'highly probable.'" *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (alteration in original) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

At the second step, the Court "shall" enter an order revoking pretrial release if it finds either that "based on the factors set forth in [§ 3142(g)] . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions or release." 18 U.S.C. § 3148(b)(2). If, at step two, the Government establishes probable cause to believe the defendant "committed a Federal, State, or local felony" while on pretrial release, a rebuttable presumption arises that no condition or combination of conditions will assure that the defendant will not pose a danger to the safety of any other person or the community. *Id.*

Here, the Parties disagree as to the Government's burden of proof at the first step of the revocation analysis. As noted, the Government moves for revocation based on the test results and reports indicating that Guisa-Ortega tested positive for fentanyl on four separate occasions while on pretrial release. The Government argues that the Court should apply the "probable cause" standard under § 3148(b)(1)(A) to determine whether revocation is required, because (i) one of the conditions of Guisa-Ortega's pretrial release it that he "not commit any federal, state, or local crime;" (ii) the four positive drug tests "indicat[e] that the defendant used fentanyl" while on pretrial release; and (ii) the possession of fentanyl violates California law under California Health

5

and Safety Code § 11350.

The defense argues that the proper standard of proof for revocation of pretrial release based on allegedly positive drug tests is the "clear and convincing" standard under § 3148(b)(1)(B), because a "specific condition" of Guisa-Ortega's pretrial release is that he "must not use or possess any narcotic or other controlled substance without a legal prescription." The defense acknowledges that Guisa-Ortega is also under a "standard condition" of pretrial release requiring that he not commit any crime and admits that the Government "need only establish a violation of that condition by probable cause." However, defense counsel argues that they are "unaware of any federal, state or local law prohibiting merely a positive test for fentanyl," as distinguished from possession of fentanyl. Defense counsel also argues that, at the February 16th hearing, the Government did previously not specify any particular criminal statute purportedly violated by Guisa-Ortega in connection with the positive drug tests. In response to the Government's reliance on California Health and Safety Code § 11350, the defense argues that violation of this statute requires knowledge, *see People v. Winston*, 46 Cal.2d 151, 158-61 (Cal. 1956), and further argues that the Government's evidence does not demonstrate the requisite knowledge because Defendant adamantly denies taking fentanyl and speculates that at best he may have unknowingly ingested some fentanyl which was mixed in without his consent or knowledge in some herbal remedies he was taking for an illness.

Pretrial Services submitted its views to the Court that positive drug test results are typically deemed to be "technical violations" of pretrial release conditions, and thus should be evaluated under the clear and convincing standard. On the merits, Pretrial Services takes the position that four positive fentanyl test results over the time period here provides sufficient evidence to support revocation of release under § 3148(b), regardless of which standard is applied.

By its terms, § 3148(b)(1) gives the Government two pathways for establishing revocation. First, the Government can proffer evidence showing that the defendant "committed a Federal, State, or local crime while on release." In the alternative, the Government can proffer evidence showing that the defendant "violated *any other condition of release*." Basic principles of statutory interpretation demonstrate that the first category comprises alleged misconduct that constitutes "a

6

Federal, State, or local crime," while the second category comprises all other conditions.

The Parties' dispute thus requires the Court to construe § 3148. As with any statutory analysis, the Court starts with the plain meaning of the statute. "Under the 'plain meaning' rule, '[w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.'" *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc)). In construing a statute, the Court must look to the statute as a whole. *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 621 (9th Cir. 2005).

Here, § 3148(b)(1)(A) is plain and clear on its face that the probable cause standard applies to evaluating whether the defendant has committed a Federal, State, or local crime while on release. Indeed, the Parties do not dispute that probable cause applies to this sub-section. Further, § 3148(b)(1)(B) is plain and clear on its face that the clear and convincing standard applies to evaluation whether the defendant has violated any other condition of release. Again, the Parties do not dispute that the clear and convincing standard applies under this sub-section.

Viewing the statute as a whole, the plain meaning of the statute makes clear that subsection (A) and subsection (B) of § 3148(b)(1) are alternatives – the statute on its face uses the word "or" between the two subsections. Similarly, subsection (B) states on its face that it applies to "any *other* condition of release" where the word "other" distinguishes subsection (B) from subsection (A) (which addresses only alleged violations of criminal law). Further, because subsection (B) expressly states that it is directed to "*any other* condition of release" (where "any" thus has its plain meaning of "every"), there is no ambiguity on the face of the statute that subsection (B) is an alternative which encompasses every condition of release *other than* the condition in subsection (A).

The statute thus is properly construed to present two alternative bases for seeking revocation. The crux of the dispute centers on whether the Government's basis for seeking revocation (illegal possession of fentanyl) must be analyzed (as the defense argues) under the clear and convincing standard of subsection (B) of § 3148(b)(1) because there exists in the conditions of

release a specific condition that the Defendant must not use illegal narcotics without a prescription; or whether the Government's basis for seeking revocation must be analyzed under the probable cause standard of subsection (A) because the knowing possession of fentanyl is a crime under California law.  The answer is clear on the face of the statute: § 3148(b) expressly states that "[t]he attorney for the Government may initiate a proceed for revocation of an order of release by filing a motion with the district court."  Thus, the statute puts the onus and the control over the scope of the bases for revocation in the Government's hands: it is up to the Government attorney, as stated in the plain and unambiguous language of the statute, to initiate the proceedings and thus make the choice of which subsection of § 3148(b)(1) to pursue.

Here, the Government expressly relies on § 3148(b)(1)(A).  The Government alleges that the positive fentanyl tests demonstrate that Guisa-Ortega illegally possessed a controlled substance while on release (since, according to the Government's logic, he must have possessed fentanyl at some point in time prior to using it).  As noted by the Government's brief, California Health and Safety Code § 11350 provides that "every person who possesses (1) any controlled substance . . . specified in subdivision (b) or (c) of Section 11055 . . . shall be punished by imprisonment in a county jail for not more than one year[.]"  Fentanyl is listed as a "controlled substance" under § 11055(c)(8).  Because the Government proffers the four positive fentanyl tests as evidence that Guisa-Ortega violated § 11350 while on pretrial release, then under § 3148(b)(1)(A), the probable cause standard applies.

Mr. Guisa-Ortega's counsel argues that the clear and convincing standard should apply to the positive drug tests because the conditions of Mr. Guisa-Ortega's release explicitly require that he "not use or possess any narcotic or other controlled substance without a legal prescription." The defense thus argues that the fact that the condition requiring abstention from illegal drug use is articulated as its own separate condition means that the condition constitutes "any other condition of release" under § 3148(b)(1)(B) to which the clear and convincing standard applies.

The defense's argument assumes incorrectly that the statutory scheme requires construing § 3148(b)(1) in such a way that an alleged violation of use of narcotics may only be asserted by the Government as a violation of "any other condition."  But, as discussed, the statutory scheme

8

does not permit the defense to recast or classify the subsection of the statute being invoked for revocation. The statute on its face plainly puts that option in the hands of the Government. While the Government could choose in some cases to pursue revocation for violation of "any other condition" even where that alleged violation could theoretically also be pursued as a violation of criminal law, nothing in the statute requires the Court (or allows the Defendant) to frame the issue in a way different from the Government's motion and nothing in the statute requires the Court to analyze the revocation under a subsection which the Government did not choose to assert. Under defense counsel's interpretation of the statute, the Government is deprived of its statutory role of initiating the proceeding and deprived of the duty and authority to frame the dispute in the manner they choose.

Defense counsel also argues that the clear and convincing standard rather than the probable cause standard should apply here, because the Government did not previously specify a particular criminal statute as the basis of violation. However, here the Government did identify a specific criminal statute (California Health & Safety Code § 11350), and thus the defense's argument on this point is moot. *Cf. United States v. Soria*, No. 2:11-cr-00156-LDG-RJJ, 2011 WL 3651272, at *8 (D. Nev. Aug. 17, 2011) ("While the Government obviously should identify the specific criminal statutes that the defendant has allegedly violated while on pretrial release, the failure to do so is not fatal, at least where, as here, the alleged conduct clearly violates applicable Federal or State criminal statutes.").

## CONCLUSION

For the reasons discussed herein and for all the reasons discussed by the Court at the Bail Revocation Hearings held in this matter (which are incorporated by reference), the Court **DETERMINES** that because the Government is seeking revocation under § 3148(b)(1)(A) due to Guisa-Ortega's alleged violation of a specified California criminal statute, the applicable burden of proof on the Government is the probable cause legal standard. This Order resolves the legal dispute between the Parties only as to the proper legal standard to be applied in this matter. Because a continuation of the Bail Revocation Hearing is set for March 6, 2024 and the

9

factual/evidentiary record is not yet complete, the Court will use this legal standard to evaluate the facts and will issue a further ruling on the merits of the alleged violation and bail revocation after the record is complete and the matter submitted.

**IT IS SO ORDERED.**

Dated: March 6, 2024

_____
PETER H. KANG
United States Magistrate Judge